UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| STATES OF NEW YORK, CALIFORNIA, and MARYLAND, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) **COMPLAINT** |
| -against- | ) |
| | ) **CIV NO. 18-4739** |
| E. SCOTT PRUITT, as Administrator of the United States Environmental Protection Agency, and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) |
| | ) |
| Defendants. | ) |

_____

Plaintiffs, the States of New York, California, and Maryland (the "States"), each represented by its Attorney General, as and for their complaint, allege as follows against Defendants E. Scott Pruitt, as Administrator of the United States Environmental Protection Agency ("EPA") and the EPA:

## NATURE OF THE ACTION

1.      This lawsuit challenges EPA's unlawful decision to delay a requirement for employers to provide enhanced training to protect farmworkers, pesticide handlers and their families from injury and other forms of harmful exposure to pesticides.

2.      Federal law requires EPA to take steps to protect humans and the environment from unreasonable adverse effects of pesticides. Consistent with this obligation, EPA has published regulations intended to reduce the risk of illness and injury resulting from agricultural workers' occupational exposure to pesticides while working on farms, or in forests, nurseries, and greenhouses.  40 C.F.R. Part 170 (the "Worker Protection Standard"). The Worker

1

Protection Standard also requires employers to provide farmworkers and pesticide handlers with the information they need to protect themselves, their families, and the environment from occupational pesticide exposure and risks.

3. In 2015, for the first time in nearly twenty-five years, EPA updated and strengthened its Worker Protection Standard "to prevent unreasonable adverse effects from exposure to pesticides among agricultural workers and pesticide handlers, vulnerable groups (such as minority or low-income populations, child farmworkers, and farmworker families) and other persons who may be on or near agricultural establishments." *Final Rule, Pesticides; Agricultural Worker Protection Standard Revisions*, 80 Fed. Reg. 67,496 (Nov. 2, 2015) (the "2015 Rule").

4. In finalizing the 2015 Rule, EPA concluded that enhanced safety training for farmworkers and pesticide handlers would reduce both the incidence and the severity of occupational pesticide exposure. 80 Fed. Reg. at 67,499, 67,503-09. The updated Worker Protection Standard therefore made a number of critical improvements to the previous training requirements, including significantly expanding the content for pesticide safety training, requiring more frequent training, establishing recordkeeping requirements to verify training, and setting qualifications for trainers. *Id.* at 67,503-09. EPA found that "[t]he expansion of information provided in the training will enable workers and handlers to better protect themselves and their families, by increasing their knowledge of how to reduce take-home residues from treated areas." *Id.* at 67,509.

5. The 2015 Rule provided that employers would be required to comply with these improved pesticide safety training provisions within 180 days after EPA published in the Federal

Register a notice of availability of the updated training materials. 80 Fed. Reg. at 67,562-63, 67,567.

6.      In December 2017, however, EPA decided to delay indefinitely the publication of the notice of availability of the improved training materials – thereby indefinitely delaying the compliance date for the enhanced pesticide safety training provisions that the agency itself had determined were necessary to protect farmworkers from harmful exposure to pesticides. EPA announced this decision through a notice in the Federal Register stating that the agency intended to reconsider certain aspects of the 2015 Rule, and that it would not publish a notice of the availability of the expanded pesticide safety training materials until its reconsideration was complete. *Pesticides; Agricultural Worker Protection Standard; Reconsideration of Several Requirements and Notice About Compliance Dates*, 82 Fed. Reg. 60,576 (Dec. 21, 2017). It decided to delay publication of the notice of availability despite admitting that the improved training materials had been prepared and were in fact available. *Id*. at 60,577. EPA's unjustified delay harms the nation's hundreds of thousands of farmworkers and their families, and is arbitrary and capricious.

## JURISDICTION AND VENUE

7.      This action is brought under the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136n(a), and the Administrative Procedure Act, 5 U.S.C. §§ 701-706. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.

8.      This Court has the authority to grant the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 702 and 706.

9.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C.

§ 1391(e)(1)(C) because this is an action brought against an agency of the United States, plaintiff

State of New York resides within the district, and no real property is involved in this action.

## PARTIES

10.     Plaintiff State of New York, as a body politic and a sovereign entity, brings this

action on behalf of itself and as trustee, guardian, and representative on behalf of all residents

and citizens of the State of New York.

11.     Plaintiff State of California, as a body politic and a sovereign entity, brings this

action on behalf of itself and as trustee, guardian, and representative on behalf of all residents

and citizens of the State of California.

12.     Plaintiff State of Maryland, as a body politic and a sovereign entity, brings this

action on behalf of itself and as trustee, guardian, and representative on behalf of all residents

and citizens of the State of Maryland.

13.     Defendant E. Scott Pruitt, named in his official capacity as Administrator of EPA,

has oversight authority for EPA's promulgation of the Worker Protection Standard and is

responsible for ensuring that the agency's implementation of the Worker Protection Standard

complies with the law.

14.     Defendant EPA is an agency of the United States government. EPA promulgated

the Worker Protection Standard and is responsible for overseeing its timely implementation.

## STATUTORY AND REGULATORY BACKGROUND

### The Worker Protection Standard

15.     The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C.

§§ 136-136y, makes it unlawful for any person to use any registered pesticide in a manner

inconsistent with its labeling. EPA has therefore implemented protections for farmworkers through use instructions on pesticide labeling. In 1992, EPA consolidated common use instructions in a single, uniform standard—the Worker Protection Standard, 40 C.F.R. Part 170—that could be incorporated into pesticide labeling by reference.

16.     The Worker Protection Standard is "primarily intended to reduce the risks of illness or injury to workers and handlers resulting from occupational exposures to pesticides used in the production of agricultural plants on agricultural establishments." 40 C.F.R. § 170.301.

17.     The Worker Protection Standard defines a "worker" (herein referred to as a "farmworker") as any person "who is employed and performs activities directly relating to the production of agricultural plants on an agricultural establishment." 40 C.F.R. § 170.305.  The regulation defines a "handler" (herein referred to as a "pesticide handler") as any person "who is employed by an agricultural employer or commercial pesticide handler employer" and who performs activities such as: "mixing, loading, or applying pesticides;" "disposing of pesticides;" "handling opened containers of pesticides;" and "assisting with the application of pesticides." *Id.*

18.     The components of the Worker Protection Standard generally can be grouped into three categories: information, protection, and mitigation. 80 Fed. Reg. at 67,501. Employers must provide farmworkers and pesticide handlers with information needed to protect themselves, others, and the environment from pesticides through pesticide safety training, pesticide application and hazard information, and access to pesticide labeling. For example, employers must ensure that farmworkers do not clean, repair, or adjust pesticide application equipment unless they are trained as pesticide handlers. 40 C.F.R. § 170.309(g). Next, employers must provide protections to farmworkers and pesticide handlers during and after pesticide applications in order to minimize potential for exposure or injury. For example, employers must make sure

that farmworkers do not enter any area on the agricultural establishment where a pesticide has been applied until the applicable hazard information has been displayed and the restricted-entry interval, which is the time after a pesticide application during which entry into the treated area is restricted, has expired. 40 C.F.R. § 170.309(l). Finally, employers must be prepared to mitigate exposures that do occur by providing for supplies for emergency decontamination and transportation to a medical facility if necessary. 40 C.F.R. § 170.309(f).

19.     Employers must also specifically assure that farmworkers and pesticide handlers receive training in pesticide safety information. 40 C.F.R. §§ 170.401(a) (farmworkers), 170.501(a) (pesticide handlers). The content of the training is specified in the Worker Protection Standard and includes topics such as: "hazards of pesticides resulting from toxicity and exposure;" "signs and symptoms of common types of pesticide poisoning;" "emergency first aid for pesticide injuries or poisonings;" and "how to obtain emergency medical care." 40 C.F.R. §§ 170.401(c)(2) and 170.501(c)(2).

**The Administrative Procedure Act**

20.     The Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, establishes the procedural requirements for federal agency decision making, including rulemakings. Prior to formulating, amending, or repealing a rule, agencies must engage in a notice-and-comment process. 5 U.S.C. §§ 551(5), 553.

21.     Under the APA's judicial review provision, "[t]he reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1), (2)(A).

## FACTUAL BACKGROUND

### I.        Farms, Pesticide Use, and Farmworkers in New York

22.        Nearly one-quarter of New York, or 7.2 million acres, is covered by farms. Of this farmland, 59 percent is dedicated to crops. As of 2012, New York was home to more than 35,500 farms. NEW YORK STATE COMPTROLLER, THE IMPORTANCE OF AGRICULTURE TO THE NEW YORK STATE ECONOMY, at 1 (March 2015), available at

http://www.osc.state.ny.us/reports/economic/importance_agriculture_ny.pdf.

23.        Agriculture occurs in every region of New York State. For example, New York's Hudson Valley Region (including Dutchess, Orange, Putnam, Rockland, Sullivan, Ulster, and Westchester counties) has approximately 2,400 farms occupying 340,000 acres of farmland. *Id*. at 4.

24.        New York ranks in the top ten, by sales, for a number of agricultural commodities. For example, New York ranks second nationwide in apple production, third for grapes, and fourth for pears. *Id*. at 2. The State is also one of the top ten producers nationwide of cherries, peaches, strawberries and for many types of vegetables, including cabbage, cauliflower, cucumbers, onions, pumpkins, beans, squash, sweet corn, and tomatoes. *Id*.

25.        The New York State Comptroller's Office reported that, during 2012, nearly 61,000 individuals were employed as hired farm labor. *Id*. The New York State Department of Labor cites the agriculture industry in New York as employing 40,000 to 80,000 farmworkers every year, including domestic, guest worker, year-round, and seasonal workers. New York State Department of Labor, State Monitor Advocate – New York,

https://labor.ny.gov/immigrants/state-monitor-advocate.shtm (last visited May 25, 2018).

26.     In New York State, the Worker Protection Standard regulations are enforced by the New York State Department of Environmental Conservation (NYSDEC), which expends resources informing regulated entities of their obligations under the regulations, conducting routine inspections of regulated entities, and investigating complaints of violations of those regulations. According to NYSDEC, the total amount of pesticides reported as applied by commercial applicators in 2013 was over 2.9 million gallons of liquids and 24.3 million pounds of solids. Over 469,000 gallons of liquid and 4.4 million pounds of solid pesticides were reported as applied by commercial applicators in Dutchess, Orange, Putnam, Rockland, Sullivan and Westchester counties. NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, FINAL ANNUAL REPORT FOR NEW YORK STATE PESTICIDE SALES AND APPLICATIONS (2013), available at https://www.dec.ny.gov/docs/materials_minerals_pdf/prl2013.pdf. These applications do not include those conducted by private applicators, which make up the majority of agricultural pesticide applications.

## II.     Farms, Pesticide Use, and Farmworkers in California

27.     California leads the nation in agricultural production, with the most cash crop receipts of any state in the nation. CALIFORNIA DEPARTMENT OF FOOD AND AGRICULTURE, CALIFORNIA AGRICULTURAL STATISTICS REVIEW (2016-2017), available at https://www.cdfa.ca.gov/Statistics/PDFs/2016-17AgReport.pdf. In 2016, California was home to 76,700 farms and ranches, totaling over 25.4 million acres of land. *Id.* at 2. These farms and ranches earned $46.04 billion for their agricultural output. *Id.* California exports more than 99 percent of the nation's almonds, artichokes, dates, dried plums, figs, garlic, kiwifruit, olives and olive oil, pistachios, raisins, table grapes, and walnuts. *Id.* at 7.

28.     In 2016, reported pesticide use in California totaled 209 million pounds.

CALIFORNIA DEPARTMENT OF PESTICIDE REGULATION, SUMMARY OF PESTICIDE USE REPORT

DATA (2016), available at http://www.cdpr.ca.gov/docs/pur/pur16rep/16sum.htm#pestuse.

29.     The number of farmworkers in California varies year-to-year and season-to-

season. California's Employment Development Department reports that in 2017, California had

an annual average of 423,700 agricultural workers. California Employment Development Dep't,

*Estimates of Agricultural Employment by Annual Average* (March 21, 2018), available at

www.labormarketinfo.edd.ca.gov/data/ca-agriculture.html. In 2014, 91 percent of California

farmworkers were immigrants, 91 percent primarily spoke Spanish, 63 percent were parents, and

only one-third had health insurance coverage. Susan Gabbard, *Who Are California Crop Workers*

*and How is this Changing*, Presented at the Annual Agricultural Personnel Management

Association's Forum for HR and Safety Professionals in the Agricultural Industry (2016),

available at https://www.doleta.gov/naws/pages/research/docs/APMA_pres_Jan2016.pdf.

30.     In California, the state's Department of Pesticide Regulation and local county

agricultural commissioners enforce state and federal pesticide regulations. California state

regulations currently have worker training requirements as strict as the 2015 Rule's expanded

safety training requirement. However, Californians who migrate out of the state for agricultural

work will not receive such training as a result of EPA's delay.

**III.     Farms, Pesticide Use, and Farmworkers in Maryland**

31.     Maryland is home to some 12,300 farms spanning more than two million acres, or

nearly one-third of the state's land area. UNITED STATES DEP'T OF AGRICULTURE ET AL.,

AGRICULTURE IN MARYLAND: SUMMARY FOR 2016, at 4 (2016), available at

https://www.nass.usda.gov/Statistics_by_State/Maryland/Publications/Annual_Statistical_Bulleti

n/2016/2016-2017%20MD%20Annual%20Bulletin.pdf. Most of Maryland's farmland is located

on the upper Eastern Shore and in the north central portion of the state. The state's most valuable

crop products include corn, soybeans, and greenhouse and nursery products. *See id*. at 5-11.

Maryland ranks in the top ten states for production of watermelons and barley. *Id*. at 3. In 2010,

agriculture in Maryland employed over 22,000 workers. UNIVERSITY OF MARYLAND CENTER FOR

AGRICULTURAL AND NATURAL RESOURCE POLICY, THE IMPACT OF AGRICULTURE ON

MARYLAND'S ECONOMY, at i (2013), available at https://drum.lib.umd.edu/handle/1903/14405.

      32.    Within Maryland, the state's Department of Agriculture implements and enforces

various federal pesticide regulations, including the Worker Protection Standard regulations. In

addition to conducting on-site inspections, the Department conducts compliance presentations

for employers. In 2014, nearly 5 million pounds of pesticides were applied in Maryland. *See*

MARYLAND DEP'T OF AGRICULTURE ET AL., MARYLAND PESTICIDE STATISTICS FOR 2014 (2016),

available at http://mda.maryland.gov/plants-pests/Documents/MarylandPesticideSurveyPub.pdf.

**IV.**    **Pesticide Exposure Among Farmworkers**

      33.    The agricultural sector continues to rank among the most hazardous industries

nationally. Centers for Disease Control and Prevention, National Institute for Occupational

Safety and Health ("NIOSH"), *Agricultural Safety*,

https://www.cdc.gov/niosh/topics/aginjury/default.html (last visited May 25, 2018).

Farmworkers experience high rates of fatal and nonfatal injuries and illnesses. RAMYA CHARI,

AMII M. KRESS, AND JAMIE MADRIGANO, RAND CORPORATION, INJURY AND ILLNESS

SURVEILLANCE OF U.S. AGRICULTURAL WORKERS (2017), available at

https://www.rand.org/content/dam/rand/pubs/research_reports/RR1500/RR1500/RAND_RR150

0.pdf. In 2015, these rates were higher than those experienced by workers in other known

hazardous occupations, such as fishing and hunting, forestry and logging, mining, and construction. *Id*. at ix.

34.     According to NIOSH, during 1998-2011, there were many reported cases of acute pesticide-related illnesses of those employed in the farming, forestry, and fishing sectors—27 in New York and 1,337 in California. *See* NIOSH Worker Health Charts, Acute Pesticide-Related Illnesses Charts, https://wwwn.cdc.gov/Niosh-whc/chart/sensor-pe (last visited May 25, 2018) (Select chart "Illnesses by Occupation", select value to chart "Count", select state "New York" or "California", and select years "All Years"). Additionally, according to EPA, "[a] sizeable portion of the agricultural workforce may be exposed occupationally to pesticides and pesticide residues." 80 Fed. Reg. at 67,498. Studies indicate that underreporting of occupational illness and poisoning is common, with an estimate of underreporting ranging from 20 to 70 percent. Environmental Protection Agency, *Economic Analysis of the Proposed Agricultural Worker Protection Standard Revisions*, EPA-HQ-OPP-2011-0184-2522 ("EPA Economic Analysis") at 132. Moreover, many pesticide exposures do not result in acute symptoms but, when accumulated over time, can result in chronic symptoms that may occur many years after exposure. *Id*.

35.     The acute symptoms from overexposure to pesticides vary, and can range from mild skin irritation to more severe effects. Severity of symptoms depends largely on the dose and route of exposure. For example, exposure to organophosphate pesticides can result in headaches, fatigue, dizziness, nausea, cramps, diarrhea, and impaired vision. Severe acute exposures can result in seizures, respiratory depression, loss of consciousness, and even death. EPA Economic Analysis at 122.

36.     In addition to these acute effects, there are chronic health effects that may be associated with chronic, generalized pesticide exposure. There is a wide range of literature demonstrating statistical associations between pesticide exposure and cancer, including blood cancers, prostate cancer, and lung cancer. EPA Economic Analysis at 162. In addition, preliminary investigations have identified elevated risks of respiratory and neurological effects, including asthma, chronic bronchitis, and Parkinson's disease, from chronic exposure to pesticides. EPA Economic Analysis at 159-66.

37.     Pesticides pose particularly dangerous risks to the children of farmworkers and pesticide handlers. Studies have shown an association between mothers exposed to pesticides during pregnancy and increased risk of birth defects and fetal death. Other studies have reported delayed mental development and development of behavior related to attention deficit/hyperactivity disorder associated with increased childhood exposure to organophosphate pesticides. EPA Economic Analysis at 124-27.

38.     Children in the families of farmworkers may be exposed to pesticides when their parents or siblings transport the pesticides into the home on their skin, clothing, and shoes. As EPA has recognized, "[c]hildren may experience different exposures than adults due to behavioral differences like crawling on the floor and putting objects into their mouths, and they can be more sensitive to these exposures because their organ systems are still developing, and they have relatively low body weights." EPA Economic Analysis at 119. Studies have consistently found higher levels of pesticides in agricultural households compared to non-agricultural households. Yet research has also shown that farmworkers are generally unaware that occupational exposure to pesticides can lead to excess pesticide exposure in the home. EPA Economic Analysis at 119-20.

39.     Moreover, communicating the risks of pesticides to farmworkers can be challenging due to language and other barriers. According to the U.S. Department of Labor, 75 percent of farmworkers in the United States were born in Mexico and 2 percent were born in Central America, and 81 percent of this group speaks Spanish as a native language. Approximately 44 percent cannot speak English at all and 53 percent cannot read any English. On average, foreign-born farmworkers have completed no more than a sixth-grade education. *See Proposed Rule, Pesticides; Agricultural Worker Protection Standard Revisions*, 79 Fed. Reg. 15,444, 15,452 (Mar. 19, 2014). According to EPA, the "low literacy rates, range of non-English languages spoken by workers and handlers, economic situation, geographic isolation, difficulty accessing health care, and immigration status of workers and handlers pose challenges for communicating risk management information and ensuring that these groups are adequately protected." *Id.* at 15,457.

40.     Exposure to harmful levels of pesticides causes adverse effects on the States' farmworkers, pesticide handlers, and their families. While underreporting and gaps in oversight data are recognized problems with respect to occupational illness among farmworkers, estimates of acute pesticide poisoning range as high as 1400 cases per year per hundred thousand farmworkers. Susan Rankin Bohme, *EPA's Proposed Worker Protection Standard and the Burdens of the Past*, 21(2) Int'l J. of Occupational & Envtl. Health 161, 161-65 (2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4457125/. Thus, for instance, based on the New York State Comptroller's figure of approximately 61,000 individuals employed as farmworkers in New York, the number of annual acute pesticide poisonings would be as high as 854 individuals in the State. The New York State Department of Labor's upper bound New York employment figure of 80,000 annual farmworkers would yield an estimate of up to 1,120 annual

acute pesticide poisonings in the State. With 423,700 farmworkers in California, the number of annual acute pesticide poisonings would be as high as 5,931 individuals in California. These estimates do not include chronic illnesses associated with pesticide exposure to adults and children.

41.     The exposure of farmworkers, pesticide handlers, and their families to harmful levels of pesticides also results in financial harm to the States. For example, the States incur costs associated with health care for farmworkers, pesticide handlers, and their family members who develop illnesses from acute or chronic exposure to pesticides. The States also experience financial harm when improperly trained farmworkers and pesticide handlers are exposed to harmful levels of pesticides, causing them (or their family members exposed through contaminated clothing) to fall ill and miss work or school. EPA, in estimating the quantified benefits of the 2015 Rule, included the avoided costs in medical care and lost productivity to farmworkers and pesticide handlers. *See* 80 Fed. Reg. at 67,498. EPA has found that the "unquantified benefit to adolescent workers and handlers, as well as children of workers and handlers is great; reducing exposure to pesticides could translate into fewer sick days, fewer days missed of school, improved capacity to learn, and better long-term health. Parents and caregivers reap benefits by having heathier families, fewer missed workdays, and better quality of life." *Id.* at 67,499.

**V.     The 2015 Rule**

42.     Beginning in the late 1990s, EPA engaged with a range of stakeholders and reviewed available information on occupational pesticide exposure in agriculture to evaluate the effectiveness of the Worker Protection Standard and to determine if improvements were necessary. 80 Fed. Reg. at 67,499-500.

43.     EPA found that under the Worker Protection Standard requirements in effect before the 2015 rulemaking, there was "strong evidence that workers and handlers may be exposed to pesticides at levels that can cause adverse effects and that both the exposures and the risks can be substantially reduced." 80 Fed. Reg. at 67,498.

44.     Moreover, EPA found that incidents of pesticide exposure could be significantly reduced by enhancing the training for farmworkers and pesticide handlers and strengthening provisions of the regulation designed to keep farmworkers and pesticide handlers out of pesticide-treated areas unless they have the proper information and personal protective equipment. It also found that "EPA's current requirement for training workers and handlers fails to address or to highlight the importance of some self-protective practices, such as reducing pesticide exposure to workers, handlers, and their families by avoiding bringing pesticide residues home on clothing, shoes, or skin." 79 Fed. Reg. at 15,447.

45.     Based on these findings, in March 2014, EPA proposed a rule updating the Worker Protection Standard for the first time since its promulgation in 1992. 79 Fed. Reg. 15,444.

46.     After considering over 2,400 written comments with over 393,000 signatures (80 Fed. Reg. 67,499), on November 2, 2015, EPA published the final rule, which amended the Worker Protection Standard in numerous ways. The 2015 Rule established a minimum age of 18 for pesticide handlers, as well as for those farmworkers who enter an area under a restricted-time interval. It created application exclusion zones, which are areas around pesticide application equipment that farmworkers may not enter while the equipment is in use. Pesticide applicators must suspend a pesticide application if farmworkers or other persons enter the application exclusion zone. The 2015 Rule also created a requirement for employers to provide pesticide

application information and safety data sheets to designated representatives making the request on behalf of farmworkers or pesticide handlers. 80 Fed. Reg. at 67,503.

47.     Furthermore, the 2015 Rule increased the required frequency of pesticide safety training from once every five years to once every year. It amended the existing pesticide safety training content and set requirements for specific training and notification for farmworkers who enter an area under a restricted-time interval. The 2015 Rule increased the pesticide training content for farmworkers from 11 to 23 topics, and for pesticide handlers from 13 to 36 topics. The new training topics focus chiefly on: (1) including more specific information in the farmworker and pesticide handler safety training on ways to reduce take-home pesticide exposure; and (2) informing farmworkers of the new Worker Protection Standard safety requirements.

48.     Specifically, the training topics added under the 2015 Rule include:

- the responsibility of agricultural employers to provide farmworkers with information and protections designed to reduce work-related exposures and illnesses;

- how a worker may designate in writing a representative to request access to pesticide application and hazard information;

- how to recognize and understand the meaning of the posted warning signs used for notifying farmworkers of restrictions on entering pesticide-treated areas;

- how to follow directions and/or signs about keeping out of pesticide-treated areas subject to a restricted-entry interval and application exclusion zones;

- information on exposure to pesticide residues that may be on or in plants, soil, tractors, application and chemigation equipment, or used personal protective equipment, and that may drift through the air from nearby applications or be in irrigation water;

- potential hazards from toxicity and exposure that pesticides present to workers and their families;

- how to use decontamination supplies to immediately wash off pesticides that are spilled or sprayed onto the body;

- the importance of decontaminating by showering with soap and water and changing into clean clothes;

- when to obtain emergency medical care;

- tips for wearing clothing in pesticide-treated areas and cleaning off pesticide residues before eating, drinking, using chewing gum or tobacco, or using the toilet;

- information on washing contaminated clothes;

- how to access safety data sheets that provide hazard, emergency medical treatment and other information about the pesticides used on the farm;

- the responsibility of employers to display safety data sheets for all pesticides used, and to provide farmworkers and pesticide handlers with information about the location of the safety data sheets;

- the prohibition on employers allowing or directing any farmworker to use pesticides unless first trained as a pesticide handler;

- the responsibility of employers to provide specific information to farmworkers before directing them to perform early-entry activities;

- the requirement that farmworkers be at least 18 years old to perform early-entry activities;

- potential hazards to children and pregnant women from pesticide exposure;

- the importance of keeping children and nonworking family members away from pesticide-treated areas;

- tips for avoiding family member exposure to pesticides from contaminated clothing or footwear;

- how to report suspected pesticide use violations to the state or tribal agency responsible for pesticide enforcement; and

- the prohibition on employers' intimidating, threatening, coercing, or discriminating against any farmworker or pesticide handler for complying with or attempting to comply with the requirements of Worker Protection Standard, or because the farmworker or pesticide handler provided information to the employer or EPA regarding conduct that violates the Worker Protection Standard, or participated in an investigation, proceeding or hearing concerning compliance with the Worker Protection Standard.

40 C.F.R. §§ 170.401(c)(3) (i)-(v), (ix)-(xii), (xiv), and (xvi)-(xxiii).

49.     In addition to all of the preceding topics, the 2015 Rule added additional training topics for pesticide handlers, including: information on proper application and use of pesticides; the requirement to follow the portions of the pesticide labeling applicable to the safe use of pesticides; the responsibility of pesticide handlers' employers to provide pesticide handlers with information and protections designed to reduce work-related pesticide exposures and illnesses; the mandate that pesticide handlers must suspend a pesticide application if workers or other persons are in the application exclusion zone; the requirement that pesticide handlers be at least 18 years old; the responsibility of pesticide handlers' employers to ensure that pesticide handlers have received respirator fit-testing, training, and medical evaluation if they are required to wear a respirator by the product labeling; and the responsibility of agricultural employers to post treated

areas as required by the Worker Protection Standard. 40 C.F.R. §§ 170.501(c)(3) (ii), (iii), and (x)-(xiv).

50.     Under the 2015 Rule, the pesticide safety training must be presented to farmworkers and pesticide handlers either orally from written materials or audio-visually, at a location that is reasonably free from distraction and conducive to training. 40 C.F.R. §§ 170.401(c)(1), 170.501(c)(1). All training materials must be EPA-approved. *Id*. The training must be presented in a manner that the farmworkers and pesticide handlers can understand, such as through a translator. *Id*. Additionally, the training must be conducted by a person who meets certain trainer requirements and who must be present during the entire training program and must respond to farmworkers' and pesticide handlers' questions. *Id*. A trainer must either: (i) be designated as a trainer of certified applicators, pesticide handlers or farmworkers by EPA or the state or tribal agency responsible for pesticide enforcement; (ii) have completed an EPA-approved pesticide safety train-the-trainer program for trainers of farmworkers/pesticide handlers; or (iii) be currently certified as an applicator of restricted use pesticides. *See id.* §§ 170.401(c)(4), 170.501(c)(4).

51.     EPA found that "[t]he expansion of information provided in the training will enable workers and handlers to better protect themselves and their families, by increasing their knowledge of how to reduce take-home residues from treated areas." 80 Fed. Reg. at 67,509. EPA estimated that the final rule's benefits, in terms of reduced exposure to pesticides, will likely exceed $67 million per year in terms of avoided costs associated with occupational pesticide incidents and with reductions in chronic diseases associated with occupational pesticide exposure. EPA Economic Analysis at v. EPA estimated that the final rule would prevent between 540 and 1,620 acute, health-related incidents each year. 80 Fed. Reg. at 67,502.

52.     While EPA agreed with commenters that "it is important for workers and handlers to have the new safety training information as soon as possible," it found that "time will be needed to create and distribute new training materials and to allow existing trainers to familiarize themselves with those new materials." 80 Fed. Reg. at 67,553. Therefore, EPA set a minimum two-year delay between the effective date of the final rule (January 1, 2016), and the earliest implementation date for the expanded pesticide safety training (January 1, 2018). *Id.* at 67,496. The 2015 Rule states that farmworkers and pesticide handlers must receive the expanded pesticide safety training "[w]ithin 180 days after a notice of availability of such training materials appears in the Federal Register, but no earlier than January 1, 2018." 40 C.F.R. § 170.401(c)(3); *see also id.* § 170.501(c)(3).

## VI.     December 2017 Federal Register Notice

53.     In its December 21, 2017 notice, EPA stated that it had initiated a rulemaking process to reconsider the requirements in the 2015 Rule for minimum age, application exclusion zone, and designated representative. 82 Fed. Reg. 60,576. EPA said that it "expect[ed] to publish a Notice of Proposed Rulemaking in FY 2018 to solicit public input on the proposed revisions to the [Worker Protection Standard]." *Id.* at 60,577.

54.     The notice stated that the compliance dates in the 2015 Rule would remain in effect, with one exception: The requirement that farmworker and pesticide handler training cover the expanded pesticide safety information would not go into effect because EPA would not publish notice in the Federal Register of the availability of improved training materials until completion of the reconsideration process. EPA acknowledged that the improved training materials had been prepared and were in fact available, noting that "there are training materials available that meet the expanded content requirement." 82 Fed. Reg. at 60,577.

55.     EPA justified its refusal to publish the notice by stating that if it decided at the completion of reconsideration to revise the 2015 Rule, the expanded training materials would have to be changed accordingly: "EPA is delaying the publication of the training materials availability notice to prevent extra work and costs to developers of the training materials and EPA reviewers." 82 Fed. Reg. at 60,577. EPA did not explain how publishing the notice of availability would create extra work or costs for developers or EPA reviewers, given that training materials had already been prepared, approved by EPA, and made accessible on the Pesticide Educational Resources Collaborative website (www.pesticideresources.org) through a cooperative agreement with EPA.  EPA failed to consider the forgone benefits during the delay of the expanded worker training the agency found was necessary to protect farmworkers, pesticide handlers, and their families.

56.     EPA stated that farmworker and pesticide handler pesticide safety training may be conducted using either the old training materials or the new expanded training materials, but that training on the expanded pesticide safety content would not be required until 180 days after EPA publishes notice of availability of training materials covering the expanded content. 82 Fed. Reg. at 60,577.

57.     Thus, until EPA publishes the notice of availability, employers are not required to train farmworkers and pesticide handlers that, for example, there are risks to their families, including children and pregnant women, from pesticide residues and to provide them information on how to reduce take home exposures. Current training instructs farmworkers and pesticide handlers to remove and wash their clothes to protect themselves, but does not mention the risk to their families. Environmental Protection Agency, *Response to Comments on Worker Protection Standard Revisions*, EPA-HQ-OPP-2011-0184-2521, at 32.

58.     Upon information and belief, EPA's failure to publish the notice of availability—which has delayed the deadline for compliance with the upgraded pesticide safety training requirements—has resulted in farmworkers and pesticide handlers in New York and Maryland not receiving training with the improved training materials.

59.     EPA has not yet issued a notice of proposed rulemaking on changes it may make to the 2015 Rule or committed to a deadline to complete the rulemaking process. As a result, it has indefinitely delayed the effective date of the 2015 Rule's expanded safety training requirement.

60.     Despite the fact that the expanded training materials include many topics that are different from the three components of the 2015 Rule that EPA has stated it intends to reconsider (minimum age, application exclusion zone, and designated representative), EPA's decision not to publish the notice of availability has indefinitely delayed the effective date of the required expanded farmworker and pesticide handler training on all aspects of the 2015 Rule.

61.     EPA's decision not to publish the notice of availability makes it more difficult for state agencies, including NYSDEC, to enforce the Worker Protection Standard because employers are not required to provide training to farmworkers and pesticide handlers on how to report suspected pesticide violations to state agencies until 180 days after the notice is published.

## FIRST CLAIM FOR RELIEF

### Arbitrary and Capricious Action Under the APA, 5 U.S.C. § 706(2)(A)

62.     The States hereby incorporate by reference the allegations contained in Paragraphs 1 through 61 as if fully set forth herein.

63.     In finalizing the 2015 Worker Protection Standard, EPA found that "[t]he expansion of information provided in the training will enable workers and handlers to better protect themselves and their families, by increasing their knowledge of how to reduce take-home

residues from treated areas." 80 Fed. Reg. at 67,509. EPA further found that "it is important for workers and handlers to have the new safety training information as soon as possible." 80 Fed. Reg. at 67,553.

64.     EPA acknowledged in December 2017 that this new training information had been developed, noting that "there are training materials available that meet the expanded content requirement." 82 Fed. Reg. at 60,577.

65.     Nonetheless, EPA decided not to publish in the Federal Register the notice of availability of those training materials, claiming that this refusal would "prevent extra work and costs to developers of the training materials and EPA reviewers." 82 Fed. Reg. at 60,577. This decision not to publish the notice has indefinitely delayed the required implementation of the expanded pesticide safety training requirements and substantially undercut the informational component of the 2015 Rule.

66.     EPA's decision not to publish the notice of availability until conclusion of its reconsideration was made without considering the harms to farmworkers, pesticide handlers, and their families from pesticide exposure during the delay.

67.     EPA's decision not to publish the notice of availability until conclusion of its reconsideration has indefinitely delayed the obligation that employers train farmworkers and pesticide handlers on all expanded training topics, despite the fact that the improved training materials concern many more topics than the three (minimum age, application exclusion zone, and designated representative) that the agency has stated it may be reconsidering.

68.     EPA's decision not to publish the notice of availability harms (i) New York's and Maryland's farmworkers and pesticide handlers, and migrant farmworkers and pesticide handlers from California working in other states, by denying them training that can help protect their

health and the health of their families, and (ii) the States by causing financial and economic

harms, including increased health care costs and lost work days.

69.     EPA's decision not to publish in the Federal Register a notice of availability until

conclusion of its reconsideration is arbitrary, capricious, an abuse of discretion, and not in

accordance with law. 5 U.S.C. § 706(2)(A).

### SECOND CLAIM FOR RELIEF

**Action Unlawfully Withheld or Unreasonably Delayed Under the APA, 5 U.S.C. § 706(1)**

70.     The States hereby incorporate by reference the allegations contained in

Paragraphs 1 through 69 as if fully set forth herein.

71.     The 2015 Rule provided that the expanded training would be required of

employers within 180 days of EPA's publication of the notice of availability of those training

materials or January 1, 2018, whichever date was later. 40 C.F.R. §§ 170.401(c)(3),

170.501(c)(3); *see also* 80 Fed. Reg. 67,506 ("[T]he rule extends the implementation period for

training on the new requirements for two years, or until six months after EPA has made the

revised training materials available, whichever is longer.").

72.     Despite admitting in its December 21, 2017 notice that the new training materials

have been prepared and are publicly available, EPA has refused to publish a notice of availability

of those training materials in the Federal Register. 82 Fed. Reg. at 60,577.

73.     EPA's refusal to publish the notice of availability until it concludes its

reconsideration of certain aspects of the Worker Protection Standard indefinitely postpones the

effective date of the employers' obligation to train farmworkers and pesticide handlers on

improved practices that EPA found necessary to protect their health and the health of their

families.

74.     Because employers are not required to provide training with the improved materials until after EPA publishes its notice of availability, EPA's failure to publish the notice of availability harms (i) New York's and Maryland's farmworkers and pesticide handlers, and migrant farmworkers and pesticide handlers from California working in other states, by denying them training that can help protect their health and the health of their families, and (ii) the States by causing financial and economic harms, including increased health care costs and lost work days.

75.     EPA's failure to publish a notice of availability of the new training materials in the Federal Register constitutes agency action unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1).

## REQUEST FOR RELIEF

WHEREFORE, the States respectfully request judgment in their favor and against Defendants upon their claims and, further, request that this Honorable Court enter judgment against Defendants:

(1) Declaring that Defendants' failure to publish the notice of availability in the Federal Register is agency action unlawfully withheld or unreasonably delayed and/or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under the Administrative Procedure Act;

(2) Enjoining Defendants to ensure publication of a notice of availability of the expanded pesticide safety training materials in the Federal Register immediately;

(3) Awarding the States their reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

(4) Ordering such other and further relief, in law or in equity, as the Court deems just and

proper.

Dated: New York, New York
      May 30, 2018

BARBARA D. UNDERWOOD
Attorney General of the State of New York
Attorney for Plaintiff

By:  _/s/ Michael J. Myers[1]
MICHAEL J. MYERS
Senior Counsel
LAURA MIRMAN-HESLIN
ABIGAIL ROSNER
Assistant Attorneys General
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
(212) 416-6091


FOR THE STATE OF CALIFORNIA

XAVIER BECERRA
Attorney General
By:  HEATHER LESLIE
Deputy Attorney General
Environment Section
1300 I Street
Sacramento, CA 95814
(916) 210-7832


FOR THE STATE OF MARYLAND

BRIAN E. FROSH
Attorney General
By:  LEAH J. TULIN
Assistant Attorney General
Office of the Attorney General
200 St. Paul Place
Baltimore, MD  21202
(410) 576-6962

---

[1] Counsel for the State of New York represents that the other parties listed in the signature blocks below consent to this filing.